1  Ekwan E. Rhow - State Bar No. 174604
      eer@birdmarella.com
2  David I. Hurwitz - State Bar No. 174632
      dih@birdmarella.com
3  BIRD, MARELLA, BOXER, WOLPERT,
      NESSIM, DROOKS & LINCENBERG, P.C.
4  1875 Century Park East, 23rd Floor
   Los Angeles, California 90067-2561
5  Telephone: (310) 201-2100
   Facsimile:  (310) 201-2110
6
7  Attorneys for Defendant Samsung
   Telecommunications America, LLC

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| LAURA CARWILE, individually and on behalf of others similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC, a Delaware limited liability company,<br><br>Defendant. | CASE NO. 2:12-CV-05660-CJC (JRPx)<br><br>**DEFENDANT SAMSUNG TELECOMMUNICATIONS AMERICA, LLC's NOTICE OF MOTION AND MOTION TO COMPEL ARBITRATION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   November 5, 2012<br>Time:  1:30 p.m.<br>Crtrm.: 9B<br><br>Assigned to Hon. Cormac J. Carney |

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD**:

Please take notice that on November 5, 2012 at 1:30 p.m. in Courtroom 9B of the above-entitled court, located at 411 West Fourth Street, Santa Ana, California, Defendant Samsung Telecommunications America, LLC ("STA") will, and hereby does, move to compel arbitration pursuant to 9 U.S.C. §§ 3 and 4.

This motion is based upon this Notice of Motion, the attached Memorandum of Points and Authorities, the Declarations of Michael Pennington and David Hurwitz filed herewith, the entire record herein, and such further briefing and argument as the Court may hear.

2899687.1

DEFENDANT'S MOTION TO COMPEL ARBITRATION

1   This motion is made following the conference of counsel in compliance with
2 Local Rule 7-3 that occurred on August 23, 2012. The parties were not able to agree
3 on a resolution of the matters raised in this motion.
4 DATED: September 10, 2012

Ekwan E. Rhow
David I. Hurwitz
BIRD, MARELLA, BOXER, WOLPERT,
   NESSIM, DROOKS & LINCENBERG, P.C.


By: ___/s/David I. Hurwitz___
       David I. Hurwitz
   Attorneys for Defendant Samsung
   Telecommunications America, LLC

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ................................................................................................ 1

II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT ........................................ 1

    A. Plaintiff's Class Action Lawsuit Against STA ....................................... 1

    B. Plaintiff's Individual Allegations ............................................................ 2

    C. Plaintiff's Customer Service Agreement with Sprint ............................. 2

    D. Allegations Intertwining STA and Sprint ............................................... 3

III. ARGUMENT AND AUTHORITIES ................................................................ 4

    A. A Valid Written Arbitration Agreement Exists ...................................... 4

    B. Plaintiff's Claims Fall Within the Scope of the Arbitration Provisions ................................................................................................ 6

    C. The Court Should Enforce The Arbitration Provisions Against Plaintiff ..................................................................................................... 7

IV. CONCLUSION ................................................................................................. 11

## TABLE OF AUTHORITIES

**Page(s)**

**FEDERAL CASES**

*Arellano v. T-Mobile USA, Inc., et al.*,
   Case No. C 10-05663, 2011 WL 1362165 (N.D. Cal. April 11, 2011) ............... 6

*AT&T Mobility LLC v. Concepcion*,
   --- U.S. ---, 131 S. Ct. 1740, 179 L. Ed. 2d 742 (2011) ....................... 5

*Bradford v. Samsung Telecommunications America LLC et. al.*, CV 10-01882
   MMM (OPx) (C.D. Cal. July 27, 2011) (slip op.) .......................... 6, 9

*Chalk v. T-Mobile USA, Inc.*,
   560 F.3d 1087 (9th Cir. 2009) ............................................... 6

*Comer v. Micor, Inc.*,
   436 F.3d 1098 (9th Cir. 2006) ............................................... 8

*Coneff v. AT & T Corp.*,
   673 F.3d 1155 (9th Cir. 2012) ............................................... 5

*Grigson v. Creative Artists Agency, L.L.C.*,
   201 F.3d 524 (5th Cir. 2000) .........................................8, 9, 10

*Hansen v. KPMG, LLP*,
   No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29,
   2005) ....................................................................... 9

*Hill v. Gateway 2000, Inc.*,
   105 F.3d 1147 (7th Cir. 1997) ............................................... 5

*In re Apple & AT & TM Antitrust Litig.*,
   826 F. Supp. 2d 1168 (N.D. Cal. 2011) .................................. 8, 11

*JLM Indus., Inc. v. Stolt–Nielsen SA*,
   387 F.3d 163 (2d Cir. 2004) ................................................. 8

*Laster v. T-Mobile USA, Inc.*,
   06CV675 DMS NLS, 2012 WL 1681762 (S.D. Cal. May 9,
   2012) ....................................................................... 5

*Meyer v. T-Mobile USA Inc.*,
   836 F. Supp. 2d 994 (N.D. Cal. 2011)...................................................................5

*Mundi v. Union Sec. Life Ins. Co.*,
   555 F.3d 1042 (9th Cir. 2009)............................................................................. 8

*Ozormoor v. T-Mobile USA, Inc.*,
   No. 08-11717, 2008 WL 2518549 (E.D. Mich. June 19, 2008)..........................5

*Positive Software Solutions, Inc. v. New Century Mortgage Corp.*,
   259 F. Supp. 2d 531 (N.D. Tex. 2003) .............................................................10

*Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration
   Intern., Inc.*,
   198 F.3d 88 (2d Cir. 1999) ................................................................................ 10

*Valero Ref., Inc. v. M/T Lauberhorn*,
   813 F.2d 60 (5th Cir. 1987) .................................................................................4

**STATE CASES**

*Berman v. Dean Witter & Co., Inc.*,
   44 Cal. App. 3d 999 (1975)................................................................................. 6

**FEDERAL STATUTES**

9 U.S.C. § 2 ................................................................................................................6

9 U.S.C. § 3................................................................................................................4

**RULES**

Federal Rule of Civil Procedure 12(b)(6).................................................................. 1

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Defendant Samsung Telecommunications America, LLC ("STA") has filed two separate motions in response to Plaintiff's complaint in this matter, which is virtually identical to the Complaint filed in another case pending before this Court, *Shane Galitski v. Samsung Telecommunications America, LLC,* Case No. 8:CV-12-00903-CJC (JRPx).

The first is this motion, which seeks to compel arbitration of Plaintiff's claims per the arbitration clauses contained in the service contracts between Plaintiff and her wireless carrier Sprint. Second, STA filed a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). In considering these motions, STA respectfully submits that the Court should first determine STA's motion to compel arbitration.[1] In her attempt to state claims against STA, Plaintiff relies heavily on her dealings with and contractual relationship with her wireless carrier Sprint. By intertwining the conduct of Sprint with the conduct of STA, Plaintiff has brought her claims within the scope of the arbitration provisions contained in her service contracts with Sprint. Accordingly, Plaintiff's claims against STA should be arbitrated, and STA respectfully requests that the Court compel Plaintiff to arbitrate.

## II. ALLEGATIONS OF PLAINTIFF'S COMPLAINT

The allegations of the complaint, which STA accepts as true solely for purposes of this Motion, are as follows:

### A. Plaintiff's Class Action Lawsuit Against STA

Plaintiff is suing STA on a class action basis for multiple state and federal claims arising out of an alleged defect in her Samsung Galaxy S smartphone. Plaintiff alleges that these mobile devices "suffer from a software or hardware

---

[1] If the Court denies STA's motion to compel arbitration, the Court should then consider STA's motion to dismiss.

2899687.1                                    1
DEFENDANT'S MOTION TO COMPEL ARBITRATION

defect, which causes the phones to randomly freeze, shut down, and power-off while in standby mode, rendering the phones inoperable and unfit for their intended use and purpose." Compl. at ¶ 2. Plaintiff alleges that: "To operate a phone that experiences the defect, a consumer must remove the battery from the Galaxy S phone, reinsert it, and power the phone back on." *Id.* at ¶ 21. Plaintiff further alleges: "Soon after the Samsung Galaxy S phones were released in Summer 2010, consumers lodged complaints about their experiences with the defect." *Id.* at ¶ 19.

### B.   Plaintiff's Individual Allegations

Plaintiff Carwile purchased a Samsung Galaxy S Epic 4G phone on or about December 6, 2011 at a Sprint Store in La Habra, California. *Id.* at ¶ 28. In May 2012, her phone began to experience the defect and she took the phone back to the La Habra Sprint Store to have it repaired or replaced. *Id.* Sprint attempted to resolve the defect with a system reboot and/or software patch, but she experienced the same defect shortly thereafter. *Id.* On June 15, 2012, Carwile took her phone to the La Habra Sprint store, where they again unsuccessfully tried to resolve the defect. *Id.* Notably, Carwile does not allege that she ever asked STA (as opposed to her wireless service carrier, Sprint) to repair or replace her phone, nor does she allege that she was informed by Samsung Customer Care at 1-888-997-4357 to return her phone for warranty repair to Sprint.[2]

### C.   Plaintiff's Customer Service Agreement with Sprint

When Plaintiff purchased her Galaxy S smartphone, she entered into a customer service contract with her wireless carrier Sprint. By activating Sprint wireless service for her Galaxy S phone, Carwile accepted the terms and conditions

---

[2]   Moreover, Plaintiff does not allege that she returned her phone to an authorized phone service facility in an adequate container for shipping with her sales receipts or substitute proofs of sale showing the original dates of purchase, the serial number of the phone and her name and address—as required by the Warranty. *See* Complaint Ex. A.

of the Sprint Customer Service Agreement. (Pennington Decl., Ex. A at 2) ("You accept the Agreement when…(b) you attempt to or in any way use the Services; (c) pay for the Services; or (d) open any package or start any program that says you are accepting the Agreement when doing so.").

The Sprint service contract contains a mandatory arbitration and class action waiver provision governed by the FAA which covers "all Disputes," defined broadly as: "any claims or controversies against each other related in any way to our Services or the Agreement, including, but not limited to, coverage, Devices, privacy, or advertising, even if it arises after Services have terminated – this includes claims you bring against our employees, agents, affiliates or other representatives, or that we bring against you." (Pennington Decl., Ex. A at 14.)

### D.  Allegations Intertwining STA and Sprint

Plaintiff's contractual relationship with her wireless carrier is essential to her claims against STA. In her complaint, Plaintiff makes several allegations that Sprint acted in concert with STA or was otherwise the agent of STA in its dealings with Plaintiff. For example, Plaintiff broadly alleges that "Whenever this complaint refers to any act of defendant Samsung, that reference shall mean . . . (3) any persons who acted as authorized agents and resellers for defendant of the phones in question." *Id.* at ¶ 11. Plaintiff further alleges that the phone carrier is an STA "authorized phone service facility" and that "it was Samsung's custom to inform customers to take their phones to their local phone carriers for service." *Id.* at ¶¶ 35-36.

This merging of STA with Sprint is critical to Plaintiff's contention that she tried (but failed) to obtain warranty service for her mobile device because her attempts to repair or replace her Galaxy S phone were conducted exclusively through Sprint and *not* directly with STA. *Id.* at ¶ 28  Moreover, after specifically pleading that Plaintiff tried and failed to receive an adequate remedy from her wireless phone carrier, Plaintiff then plead that "*Samsung* has failed to cure the defect or

replace Plaintiff's Samsung Galaxy S phone with a non-defective phone and offer full compensation required under federal and state law." *Id.* at ¶ 33 (emphasis added).

In this regard, Plaintiff's claims against STA are largely based on her dealings with and contractual relationships with Sprint. For example, Plaintiff alleges that "[w]hen consumers contacted Samsung and its authorized agents and resellers to complain about the defect, Samsung denied there was any defect . . . ." *Id.* at ¶ 34.

### III.  ARGUMENT AND AUTHORITIES

The main issue presented by this motion is whether STA (a nonsignatory to Plaintiff's service contract with the wireless carrier) may seek to compel the Plaintiff to bring her claims against STA in arbitration. As explained in detail below, the Court should compel Plaintiff to arbitration because Plaintiff has put her wireless carrier's conduct directly at issue in this lawsuit. Indeed, without relying on her contractual relationship with and dealings with her wireless carrier, Plaintiff would have no lawsuit against STA. Following principles set out in the controlling Ninth Circuit case law, this case should be sent to arbitration, just as STA requested be done with the Plaintiffs in the *Galitski* case.

#### A.  A Valid Written Arbitration Agreement Exists

At the outset, there is no dispute in this case that Plaintiff is party to a binding service contract with her wireless service carrier and that the service contract requires arbitration. Pennington Decl. ¶¶ 4-5.

The FAA requires that, for an arbitration provision to be valid, it must be in writing and must be an "agreement" between the parties. 9 U.S.C. §§ 2-3. There is no requirement, however, that an enforceable arbitration agreement actually be signed by the parties; rather, all that is required is that each party has agreed to be bound. *See Valero Ref., Inc. v. M/T Lauberhorn*, 813 F.2d 60, 62 (5th Cir. 1987) ("It is established that a party may be bound by an agreement to arbitrate even in the

1 absence of his signature.").

2 Furthermore, a party may be bound by the terms and conditions of an
3 agreement by accepting a good or service, even if the terms and conditions are not
4 made known to the party before purchasing that good or service. *See Hill v.*
5 *Gateway 2000, Inc.*, 105 F.3d 1147, 1148 (7th Cir. 1997) (holding that consumer
6 who purchased computer over the telephone was bound by terms and conditions of
7 contract shipped with computer when he did not return the computer to the seller);
8 *Meyer v. T-Mobile USA Inc.*, 836 F. Supp. 2d 994, 1000 (N.D. Cal. 2011) (plaintiff
9 bound by arbitrations provision in terms and conditions based on her renewal of
10 wireless carrier's service and contract); *Ozormoor v. T-Mobile USA, Inc.*, No. 08-
11 11717, 2008 WL 2518549, at *3 (E.D. Mich. June 19, 2008) (plaintiff was bound by
12 arbitration agreement contained in wireless carrier's terms and conditions when
13 plaintiff activated phone and did not return it within 14 days). Plaintiff's own
14 allegations show that she agreed to the service contract with her wireless carrier
15 when she purchased her mobile device.[3]

16 The Ninth Circuit has considered a similar arbitration clause in a wireless
17 carrier's service contract and held that the arbitration clause at issue was not
18 substantively unconscionable. *See Coneff v. AT & T Corp.*, 673 F.3d 1155, 1162
19 (9th Cir. 2012). Following *Coneff*, a district court held that a similar arbitration
20 clause in a wireless carrier's service contract was not procedurally unconscionable.
21 *Laster v. T-Mobile USA, Inc.*, 06CV675 DMS NLS, 2012 WL 1681762 (S.D.
22 Cal. May 9, 2012) (granting motion to compel arbitration).

23 Because the service contract contains an enforceable mandatory arbitration

---

[3] Furthermore, because the service contract contains a waiver-of-class action provision (*see* Pennington Decl., Ex. A at 15) that provision should be enforced and Plaintiff should be required to arbitrate her claims separately and not on behalf of a class. *AT&T Mobility LLC v. Concepcion*, --- U.S. ---, 131 S. Ct. 1740, 1753, 179 L. Ed. 2d 742 (2011) (upholding class waiver provision of arbitration clause in consumer contract for wireless service).

5
DEFENDANT'S MOTION TO COMPEL ARBITRATION

1 provision, under 9 U.S.C. § 2, Plaintiff is required to arbitrate her claims.

### B. Plaintiff's Claims Fall Within the Scope of the Arbitration Provisions

Likewise, there is no dispute that Plaintiff's claims against STA are covered by the arbitration clauses contained in the service contract. Under applicable California law, an arbitration agreement may broadly encompass both contractual and tort claims. *See, e.g., Berman v. Dean Witter & Co., Inc.*, 44 Cal. App. 3d 999, 1003 (1975) (holding phrase "any controversy … arising out of or related to this contract" broad enough to encompass both contract and tort claims). Federal courts in this Circuit have compelled arbitration of claims asserted against a cellular phone manufacturer where the claims against the manufacturer were asserted in the same proceeding as claims against the phone carrier. *See Arellano v. T-Mobile USA, Inc., et al.,* Case No. C 10-05663, 2011 WL 1362165 (N.D. Cal. April 11, 2011) (finding that T-Mobile's supplier was an intended third-party beneficiary of arbitration agreement between T-Mobile and consumer plaintiff, and compelling arbitration of claims against supplier); *Bradford v. Samsung Telecommunications America LLC et. al.,* CV 10-01882 MMM (OPx) (C.D. Cal. July 27, 2011) (slip op.) (order granting Samsung's motion to compel arbitration of class action claim asserted against it based on consumer's arbitration agreement with T-Mobile);[4] *see also Chalk v. T-Mobile USA, Inc.*, 560 F.3d 1087, 1092, n. 2 (9th Cir. 2009) (noting that the District Court had determined that language in T-Mobile's arbitration agreement covering "equipment manufacturers and dealers" covered claims against Sony, T-Mobile's supplier in that case).

Here, the arbitration clause in the Sprint service contract encompasses Plaintiff's claims against STA. The Sprint contract states: "We each agree to

---

[4] A copy of the July 27, 2011 Order Granting Samsung Telecommunications, LLC's Motion to Compel Arbitration in *Bradford* is attached to the Declaration of David Hurwitz as Exhibit A.

finally settle all disputes (as defined and subject to any specific exceptions below) only by arbitration." (Pennington Decl., Ex. A 14.) The Sprint contract defines "disputes" broadly as: "any claims or controversies against each other related in any way to our Services or the Agreement, including, but not limited to . . . Devices . . . ." (*Id.*)

Plaintiff alleges various claims based on warranty law and state consumer protection statutes, all arising out of alleged defects in STA's Galaxy S phones. Plaintiff alleges that she experienced these defects while subscribing to wireless service from Sprint. Plaintiff's claims, therefore, depend significantly on Sprint's purported status as an "authorized agent" and "authorized phone service facility" for STA. Compl. at ¶¶ 35-37. As the alleged "agent" of STA,[5] Sprint is alleged to have attempted, but failed, to repair the defect or provide a functioning replacement phone.

It is beyond question that any customer claim against Sprint that arose from the carrier's conduct in servicing a phone would be subject to arbitration. Finally, there can be no question that Plaintiff's claims against STA, which explicitly rest on the alleged conduct of Sprint as a so-called "authorized agent" of STA for phone servicing, fall squarely within the scope of the arbitration agreement. Accordingly, Plaintiff's claims are within the scope of the arbitration provisions of the service contract with Sprint.

**C. The Court Should Enforce The Arbitration Provisions Against Plaintiff**

STA, although a nonsignatory to the service contracts, may seek to enforce

---

[5] In its contemporaneously-filed motion to dismiss, STA argues that Plaintiff has failed to plead sufficient facts to establish an agency relationship between STA and Sprint. That being said, Plaintiff's allegations related to the conduct of Sprint – whether or not Plaintiff has adequately pleaded an agency relationship between STA and the wireless carrier – do bring Plaintiff's claims within the scope the arbitration clause cited above.

the arbitration provisions against Plaintiff under controlling Ninth Circuit precedent. *See Mundi v. Union Sec. Life Ins. Co.,* 555 F.3d 1042, 1045–46 (9th Cir. 2009) (recognizing that under principles of equitable estoppel a non-signatory may compel a signatory to arbitrate); *Comer v. Micor, Inc.,* 436 F.3d 1098, 1101 (9th Cir. 2006) (identifying equitable estoppel as grounds for enforcing arbitration clauses as to non-signatories).

Federal courts in California have permitted a nonsignatory to compel arbitration on equitable estoppel grounds in two circumstances. *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1176 (N.D. Cal. 2011), motion to certify appeal granted, 2012 WL 293703 (N.D. Cal. Feb. 1, 2012). First, equitable estoppel applies "where the 'signatory to a written agreement containing an arbitration clause must rely on the terms of the written agreement in asserting its claims against the [non-signatory].'" *Id.*; *see also Grigson v. Creative Artists Agency, L.L.C.*, 201 F.3d 524, 527 (5th Cir. 2000).

Second, compelling arbitration on equitable estoppel grounds is appropriate where "the issues the [non-signatory] is seeking to resolve in arbitration are intertwined with the agreement that the estopped party has signed." *In re Apple*, 826 F. Supp. 2d at 1176; *see also JLM Indus., Inc. v. Stolt–Nielsen SA*, 387 F.3d 163, 177 (2d Cir. 2004). Either prong may independently support arbitration-by-equitable-estoppel.

Plaintiff's allegations about the conduct of STA and Sprint show that her claims are intertwined with and dependent upon her contractual relationship with Sprint. These allegations warrant arbitration-by-estoppel under the second prong identified above. Plaintiff's allegations include:

- In May 2012, her phone began to experience the defect and she took to phone back to the La Habra Sprint Store to have it repaired or replaced. Complaint ¶ 28.
- Sprint attempted to resolve the defect with a system reboot and/or

software patch, but she experienced the same defect shortly thereafter. *Id.*

- On June 15, 2012, Carwile took her phone to the La Habra Sprint store, where they again unsuccessfully tried to resolve the defect. *Id.*

In light of these allegations, Plaintiff should be estopped from denying arbitration of her claims. Indeed, without wireless service provided by Sprint , without agreeing to be bound by the terms of the service contract with her wireless carrier, and without allegations of Sprint's conduct, Plaintiff would have no factual basis for this lawsuit.

In addition to the above, one other factor courts have looked to in evaluating a motion to compel arbitration on equitable estoppel grounds is whether the complaint unifies signatory and nonsignatory parties such that the allegations against one cannot be separated from the other. *See generally Bradford*, Slip. Op. at 11-13 (where a plaintiff asserts claims against both a signatory and non-signatory, courts allow the nonsignatory to invoke equitable estoppel to compel arbitration if "(1) the complaint raises allegations of substantially interdependent and concerted misconduct by both a signatory and one or more non-signatories; and (2) this misconduct is founded in and intertwined with the underlying contractual obligations", citing *Hansen v. KPMG, LLP*, No. CV 04-10525-GLT (MANx), 2005 WL 6051705 (C.D. Cal. Mar. 29, 2005)). In *Bradford,* the plaintiffs attempted to circumvent the arbitration agreement by dismissing their claims against the carrier and attempting to litigate their remaining claims against STA only. The *Bradford* court rejected this gambit, citing the Fifth Circuit's opinion in *Grigson,* and granted STA's motion to compel arbitration. *Id.*

Here, Plaintiff's allegations expressly unify any act of STA and Sprint as an act of "defendant Samsung," thus rendering it impossible to know which entity is discretely responsible for which allegations, in whole or part. *See* Compl. at ¶ 11. By alleging that STA and Sprint are unified as principal and agent, Plaintiff seeks to

9
DEFENDANT'S MOTION TO COMPEL ARBITRATION

hold STA responsible for the wireless carrier's conduct. Courts have enforced arbitration-by-estoppel against a signatory plaintiff based on similar failures to distinguish between signatory and nonsignatory parties' conduct. *See Smith/Enron Cogeneration Ltd. Partnership, Inc. v. Smith Cogeneration Intern., Inc.*, 198 F.3d 88, 97-98 (2d Cir. 1999) (upholding arbitration-by-estoppel, in part, because plaintiff's complaint treated both signatory and nonsignatory entities as the same entity); *Positive Software Solutions, Inc. v. New Century Mortgage Corp.,* 259 F. Supp. 2d 531, 540 (N.D. Tex. 2003) (enforcing arbitration-by-estoppel in part because complaint lumped signatory and nonsignatory parties together as "Defendants").

Finally, even when a complaint does not unify the signatory and nonsignatory parties as is the case here, courts have enforced arbitration clauses when the nonsignatory's liability cannot be considered without evaluating the signatory's conduct. *See Grigson*, 201 F.3d at 527. The allegations of the complaint show that Plaintiff's claims are only actionable by virtue of Sprint's conduct and the contractual relationship between Plaintiff and Sprint.

First, based on the allegations in the complaint, it is impossible for Plaintiff to bring her warranty causes of actions against STA without considering the conduct of Sprint. Indeed, Plaintiff does not allege she has ever contacted STA when attempting to repair or replace her phone; she only alleges she interacted with Sprint. As pleaded, the alleged defect in the Galaxy S phone is only actionable because of Sprint's failure to correct the defect. Because it is impossible to consider claims against STA without considering Sprint's conduct, arbitration-by-estoppel is warranted.

Second, Plaintiff only sought repair and replacement from her wireless carrier by virtue of the fact that she had contracted for wireless service with Sprint. The natural inference from the complaint is that, because Plaintiff received wireless service for her phone through Sprint, she was justified in going to the carrier for

1 service. In other words, it is the contractual relationship between Sprint and
2 Plaintiff – as memorialized in the service contract – that gives rise to the allegations
3 underlying Plaintiff's claims. *In re Apple*, 826 F. Supp. 2d at 1176 (holding that
4 Apple could enforce an arbitration clause in a wireless service contract under
5 equitable estoppel theory).

6 Had Plaintiff filed suit against Sprint for failures to repair or replace her
7 phone, those claims would unquestionably have to be arbitrated. Had Plaintiff
8 joined her potential claims against the wireless carrier in a suit against STA, the
9 claims against STA would also unquestionably have to be arbitrated. By suing only
10 STA, and not the carrier, Plaintiff is clearly attempting to avoid arbitration despite
11 the fact that Plaintiff's claims fall squarely within the scope of the wireless service
12 contract. Plaintiff should not be allowed so easily to escape her agreement to
13 arbitrate.

## IV. CONCLUSION

For the foregoing reasons, and in the alternative to the contemporaneously filed motion to dismiss, Defendant respectfully moves this Court to compel Plaintiff to arbitrate her claims separately and as an individual in accordance with the terms of the Sprint customer agreement.

DATED: September 10, 2012         Ekwan E. Rhow
                                  David I. Hurwitz
                                  BIRD, MARELLA, BOXER, WOLPERT,
                                     NESSIM, DROOKS & LINCENBERG, P.C.


                                  By:    /s/David I. Hurwitz
                                           David I. Hurwitz
                                     Attorneys for Defendant Samsung
                                     Telecommunications America, LLC