1  Jeffrey R. Krinsk  (CA Bar No. 109234)
   jrk@classactionlaw.com
2  Mark L. Knutson  (CA Bar No. 131770)
   mlk@classactionlaw.com
3  William R. Restis (CA Bar No. 246823)
   wrr@classactionlaw.com
4  FINKELSTEIN & KRINSK LLP
   501 West Broadway, Suite 1250
5  San Diego, California 92101-3579
   Telephone: (619) 238-1333
6  Facsimile:  (619) 238-5425

7  Attorneys for Plaintiff
   Laura Carwile

8

9                    UNITED STATES DISTRICT COURT

10                  CENTRAL DISTRICT OF CALIFORNIA

11

12  LAURA CARWILE, individually and on | Case No. 12-cv-5660 CJC (JPRx)
    behalf of all other similarly situated,

13                                     | **PLAINTIFF'S OPPOSITION TO**
                         Plaintiff,    | **DEFENDANT SAMSUNG**
14                                     | **TELECOMMUNICATIONS**
                                       | **AMERICA, LLC'S MOTION TO**
15         v.                          | **DISMISS CLASS ACTION**
                                       | **COMPLAINT**
16
    SAMSUNG TELECOMMUNICATIONS
17  AMERICA, LLC, a Delaware Limited   | Date: January 28, 2013
    Liability Company,                 | Time: 1:30 p.m.
18                                     | Dept.: 9B
                                       | Judge: Hon. Cormac J. Carney
19                         Defendant.

20

21

22

23

24

25

26

27

28

# Table of Contents

I.      INTRODUCTION ........................................................................................ 1

II.     STATEMENT OF FACTS ......................................................................... 3

III.    ARGUMENT .............................................................................................. 5

        A.      STANDARD ON A MOTION TO DISMISS ............................................. 5

        B.      PLAINTIFFS ADEQUATELY ALLEGE CLAIMS FOR BREACH OF
                EXPRESS WARRANTY / BREACH OF CONTRACT .......................... 6

                1.      Sprint Is An Authorized Phone Service Facility .............................. 8

                2.      Plaintiff Gave Samsung A Reasonable Opportunity To Repair Or
                        Replace The Phone By Taking It To Defendant's Authorized
                        Phone Service Facility, And Because Calling Samsung Customer
                        Care Is Not A Condition Precedent Under The Warranty ............. 11

                3.      The Phone's Defects Are Covered By The Warranty For
                        "Materials And Workmanship" ...................................................... 14

        C.      PLAINTIFF'S COMPLAINT ALLEGES BREACH OF IMPLIED
                WARRANTY .......................................................................................... 15

        D.      PLAINTIFF PLAUSIBLY ALLEGES DEFENDANT'S VIOLATION
                OF THE UCL ......................................................................................... 18

IV.     PLAINTIFF ALLEGES ACTIONABLE CLAIMS FOR COMMON
        COUNTS ................................................................................................... 20

V.      CONCLUSION ......................................................................................... 21

## Table of Authorities

**Cases**

*Alberti v. General Motors Corp.*, 600 F. Supp. 1026 (D.D.C. 1985)......................... 13

*Ashcroft v. Iqbal,* 129 S.Ct. 1397 (2009)........................................................ 6

*Cel Tech Comm' Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163 (1999)....... 19

*Cipollone v. Liggett Group, Inc.*, 505 U.S. 504 (1992)................................................ 6

*Clemens v. Daimlerchrysler Corp.*, 534 F.3d 1017 (9th Cir. 2008)............................ 7

*Cummins, Inc. v. Superior Court*, 36 Cal. 4th 478 (2005) ......................................... 11

*Forty-Niner Sierra Resources, Inc. v. Subaru of America, Inc.*, 416 F.Supp.2d 861 (E.D. Cal. 2004)........................................................................................ 9

*Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal.App.3d 65 (1978) ............. 17

*Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246 (9th Cir. 1997)........................................ 6

*Global Packaging, Inc. v. Superior Court*, 196 Cal.App.4th 1623 (2011) ................. 7

*Gonzalez v. Drew Industries, Inc.*, 750 F.Supp.2d 1061 (C.D. Cal. 2007).......... 15, 17

*Gusse v. Damon Corp.*, 470 F.Supp.2d 1110 (C.D. Cal. 2007) ................................. 17

*Horvath v. LG Electronics Mobilecomm U.S.A. , Inc.*, 2012 WL 2861160 (S.D. Cal., Feb. 13, 2012)........................................................ 7, 10, 14, 16, 17, 19, 20

*In re NVIDIA GPU Litig.*, 2009 WL 4020104 (N.D. Cal. Nov. 19, 2009) ............... 20

*In re Sony Grand Wega, KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758 F.Supp.2d 1077 (S.D. Cal. 2010)........................................................ 8

*In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, -- F.Supp.2d --, 2011 WL 8986794 (C.D. Cal. Sept. 12, 2011) ....... 5, 19, 20

*Isip v. Mercedes-Benz USA, LLC,* 155 Cal.App.4th 19 (2007)........................... 15, 16

*Jensen v. BMW of North America, Inc.*, 35 Cal.App.4th 112 (1995)......................... 10

*Jiagbogu v. Mercedes-Benz USA*, 118 Cal. App. 4th 1235 (2004) ........................... 11

*Keegan v. American Honda Motor Co., Inc.*, 838 F.Supp2d 929 (C.D. Cal. 2012) ................................................................... 15, 16, 17

*Korea Supply Co. v. Lockheed Martin* Corp., 29 Cal. 4th 1134 (2003)................... 19

*Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033 (9th Cir. 2003)...................... 19

*Martinez v. Kia Motors Am., Inc.*, 193 Cal. App. 4th 187 (2011)............................. 11

*Matrixx Initiatives, Inc. v. Siracusano*, 131 S.Ct. 1309 (2011) ..................................... 6

*McBride v. Boughton*, 123 Cal. App. 4th 379 (2004) ................................................. 20

*McFadden v. Dryvit*, 2004 WL 2278542 (D. Or. Oct. 8, 2004) ................................. 13

*Memory Control Enterprise, LLC v. Edmunds.com, Inc.*, 2012 WL 681765 (C.D. Cal. Feb. 8, 2012) ........................................................................................................... 6

*Mexia v. Rinker Boat Co., Inc.*, 174 Cal. App. 4th 1297 (2009) ............................... 11

*Miller v. Germain Seed & Plant Co.*, 193 Cal. 62 (1924) .......................................... 7

*Mocek v. Alfa Leisure, Inc.*, 114 Cal.App.4th 402 (2003) ......................................... 18

*Motors, Inc. v. Times Mirror Co.*, 102 Cal. App. 3d 735 (1980) .............................. 20

*Nguyen v. PennyMac Loan Services, LLC*, 2012 WL 6062742 (C.D. Cal. Dec. 5, 2012) ............................................................................................................................... 8

*People v. Duz-Mor Diagnostic Lab.*, 68 Cal. App. 4th 654 (1998) .......................... 19

*Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751 (N.D. Ohio 2001) ........... 13

*Robertson v. Fleetwood Travel Trailers of Cal., Inc.*, 144 Cal.App.4th 785, 799 (2006 .............................................................................................................................. 13

*Robertson v. Fleetwood Travel Trailers of California, Inc.*, 144 Cal.App.4th 785 (2006) ............................................................................................................................. 7

*RRX Indus., Inc. v. Lab-Con, Inc.*, 772 F.2d 543 (9th Cir. 1985) ............................ 16

*S.M. Wilson & Co. v. Smith Int'l., Inc.*, 587 F.2d 1363 (9th Cir. 1978) .................... 16

*Stearns v. Select Comfort Retail Corp.*, 763 F.Supp.2d 1128 (N.D. Cal. 2010) .......... 6

*Toyota Motor Corp. Unintended Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 754 F.Supp.2d 1145 (C.D. Cal. 2010) ........................... 17

*Travelers Cas. and Surety Co. v. Transcontinental Ins. Co.*, 122 Cal.App.4th 949 (2004) ............................................................................................................................ 11

*Wailea Partners, LP v. HSBC Bank USA, N.A.*, 2011 WL 6294476 (N.D. Cal. Dec. 15, 2011) ....................................................................................................................... 12

*Wallman v. Suddock*, 200 Cal.App.4th 1288 (2011 .................................................... 9

*Williams v. Gerber Prods. Co*, 523 F.3d 934 (9th Cir. 2008). .................................. 19

**Statutes**

CAL. COMM. CODE § 2314 .......................................................................................... 16

California's Unfair Competition Law, CAL. BUS. & PROF. CODE § 17200, *et seq* ....... 1

Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.* ........................................ 1, 7

Song-Beverly Consumer Warranty Act, CAL. CIV. CODE
§ 1790, *et seq* ................................................................................ 1, 7, 9, 10, 15, 16, 17

**Rules**

FED. R. CIV. P. 12(b)(6) ................................................................................................ 5

FED. R. CIV. P. 8(a) ................................................................................................. 2, 8

1        Plaintiff Laura Carwile (hereafter "Plaintiff" or "Carwile") respectfully

2  submits this Opposition to Defendant Samsung Telecommunications America, LLC's

3  (hereafter "Samsung" or "Defendant") Motion to Dismiss Class Action Complaint

4  (the "Motion to Dismiss" or "M2D").

5  **I.   INTRODUCTION**

6        This litigation seeks to remedy basic defects in Plaintiff's Galaxy S smart

7  phone, manufactured by defendant Samsung. Plaintiff brings this case on behalf of

8  herself and a class defined as:

9
10
11
12

> All persons who, while residing in California since June 20, 2012, purchased one or more Samsung Galaxy S mobile phones from Samsung or its authorized retailer sellers and experienced a software or hardware defect, which causes the phones to randomly freeze, shut down, and power-off, or are likely to experience the defect during the useful life of the phone.

13  Compl., Dkt # 1, ¶ 43.

14        Plaintiff asserts claims for breach of express and implied warranty under

15  California common law, the Uniform Commercial Code ("U.C.C."), Song-Beverly

16  Consumer Warranty Act ("Song-Beverly", CAL. CIV. CODE § 1790, *et seq* and

17  Magnuson-Moss Warranty Act ("Magnuson-Moss," 15 U.S.C. § 2301, *et seq.*), as

18  well as breach of contract, unlawful and unfair business practices in violation of

19  California's Unfair Competition Law (the "UCL", CAL. BUS. & PROF. CODE § 17200,

20  *et seq.*), and common counts.[1]

21        While Defendant's motion appears to offer a buffet of arguments supporting

22  dismissal, Samsung's Motion to Dismiss is properly condensed into three arguments:

23        (1)   Plaintiff took her defective Galaxy S phone to her wireless carrier -

24  Sprint - for repair and service under Samsung's warranty. Samsung thus asserts that

25  Plaintiff has failed to satisfy the warranty's condition that consumers seek repairs at

26

---

[1] Plaintiff's Complaint also asserts a count for Strict Liability resulting from design defect. However, after careful review of Defendant's brief, Plaintiff does not oppose Defendant's motion to dismiss her strict liability claim.

27
28

1    "authorized phone service facilit[ies]." M2D, *passim*. Defendant's argument ignores

2    key allegations concerning Sprint's status as an "authorized phone service facility"

3    (*see,* Compl., ¶¶ 28, 36, 42) while seeking to hold Plaintiff's allegations to a

4    heightened pleading standard even though it is governed by FED. R. CIV. P. 8(a). The

5    futility of Samsung's argument is evident because Samsung  does not dispute that

6    Plaintiff and Class members' wireless carriers are in fact "authorized phone service

7    facilities," only that Plaintiff did not plead sufficient supporting detail.  In other

8    words, by taking their defective phones to their wireless carrier for service, Plaintiff

9    and the Class fully complied with the terms of the Warranty. *See infra*, § III.B.1.

10        (2)    Compounding the faulty logic of its initial argument, Samsung asserts

11   that Plaintiff's repeated trips to Sprint for repair or replacement of her phone did not

12   give Samsung an opportunity to cure the Defect. Samsung argues that was given

13   inadequate opportunity to "repair or replace" Plaintiff's phone because the phone

14   went to Sprint, not Samsung. This argument's counterfeit logic necessarily requires

15   the Court to disregard Plaintiff's allegations that wireless carriers like Sprint are in

16   fact "authorized phone service facilities" or otherwise act as Defendant's agents for

17   repair or service. Accepting the truth of the Complaint's allegations, and construing

18   it in the light most favorable to Plaintiff, is an element of pleading disregarded by

19   Defendant's motion. *See infra*, § III.B.2.

20        (3)    Samsung interprets elective language in the warranty regarding calling

21   Samsung Customer Care as a requirement and condition precedent to warranty

22   coverage. *See,* M2D at p. 8:13-22. However, the Warranty merely states: "[t]o obtain

23   assistance on where to deliver the Product, please call SAMSUNG Customer Care

24   …", which is irrelevant and fails to meet the legal standards for a condition

25   precedent.  Samsung's argument untenably asserts that even if Plaintiff took her

26   Galaxy S to an "authorized phone service facility" – her Sprint store – she would be

27

28

1
2

prohibited from proceeding under the Warranty by not first call Samsung. *See infra*, § III.B.2.

3
4
5
6

Tellingly, Samsung does assert that Plaintiff has failed to identify a defect or failed to characterize the Galaxy S as fundamentally defective. This underscores the cogency of Plaintiff's Complaint and highlights that Defendant's motion to dismiss is unrelated to the merits.[2]

7

## II.   STATEMENT OF FACTS

8
9
10
11
12

In 2010, Samsung released the Galaxy S line of mobile phones to the U.S. market. Compl., ¶¶ 3, 19. The Galaxy S family of "smart phones" includes the Epic 4G for Sprint, the Captivate for AT&T, the Vibrant for T-Mobile, and the Fascinate for Verizon. *Id.*, ¶ 16, 17. These are all the same Samsung Galaxy S phone, with a different name given for each wireless provider. *Id.*, ¶ 16.

13
14
15
16
17
18
19
20
21
22

Immediately after release, the Galaxy S manifested a defect causing the phone to randomly freeze, shut down, and power-off while in standby mode, rendering the phone inoperable and unfit for its intended purpose (the "Defect"). *Id.*, ¶¶ 2, 15, 22. The Defect is not aberrational, but occurs unpredictably and repeatedly, causing the Galaxy S to freeze or power off as often as ten times per day. *Id.*, ¶ 22. Once the Galaxy S is powered back on, or while the phone is being used to make calls, it is susceptible to again powering off and losing data. *Id.,* ¶¶ 22-23. While in standby mode, the Galaxy S freezes and powers off, thus being unable to receive or deliver calls, emails or text messages, requiring consumers to constantly monitor the phone to know whether they are able to communicate. *Id.*, ¶ 20. To operate the defective

23

24
25
26
27
28

---

[2] Defendant argues that "Plaintiff's complaint is virtually identical to which is [sic] virtually identical to the Complaint filed in another case pending before this Court, *Shane Galitski v. Samsung Telecommunications America, LLC,* Case No. 2:cv-12-00903-CJC (JPRx)." M2D at p. 1:8-11. However, this is not the *Galitski* case. This case includes causes of action not present in Galitski – strict liability for design defect, and omits causes of action present in *Galitski* – violation of the Consumer Legal Remedies Act. The cases seek to represent different classes, have different plaintiffs, and unrelated plaintiffs' counsel. The cases were never coordinated or consolidated, and Samsung has not moved to transfer this case to Texas, as there would be no factual or legal basis to do so.

1  Galaxy S, a consumer is forced to remove the phone's battery, reinsert it, and power

2  the phone back on. *Id.*, ¶ 21.

3      The Defect manifests across the entire Galaxy S family regardless of the

4  wireless carrier. *Id.,* ¶ 18. Within months after release of the Galaxy S, thousands of

5  consumer complaints appeared online, including on Samsung's own website. *Id.*, ¶

6  19. Though aware of the Defect, Samsung – no doubt refusing to cede market share

7  to competitors – continued to sell and warrant the phone without disclosing the

8  Defect to consumers. ¶¶ 7, 24, 32

9      The Galaxy S phones come with an express warranty, attached to Plaintiff's

10  Complaint as Exhibit "A", which provides in pertinent part:

11  **What is covered and for how long?**
SAMSUNG TELECOMMUNICATONS AMERICA, LLC
12  ("SAMSUNG") warrants to the first consumer purchaser ("Purchaser")
that <u>Samsung's handsets and accessories ("Products") are free from</u>
13  <u>defects in material and workmanship</u> under normal use and service for
the period commencing upon the date of purchase and continuing for
14  the following specified period of time after that date:
Phone: 1 Year
15                  *     *     *

  **What are SAMSUNG's Obligations**?
16  <u>During the applicable warranty period,</u> provided the Product is returned
<u>in accordance with the terms of this Limited Warranty, SAMSUNG</u>
17  <u>will repair or replace the Product, at SAMSUNG's sole option, without</u>
<u>charge.</u> SAMSUNG may, at SAMSUNG's sole option, use rebuilt,
18  reconditioned, or new parts or components when repairing any Product,
or may replace the Product with a rebuilt, reconditioned or new
19  Product. …
                *     *     *
20  **What must you do to obtain warranty service?**
To obtain service under this Limited Warranty, <u>you must return the</u>
21  <u>Product to an authorized phone service facility</u> in an adequate container
for shipping, accompanied by the sales receipt or comparable proof of
22  sale showing the original date of purchase, the serial number of the
Product and the seller's name and address. To obtain assistance on
23  where to deliver the Product, please call SAMSUNG Customer Care at
1-888-987-4357. If SAMSUNG determines that any Product is not
24  covered by this Limited Warranty, you must pay all parts, shipping, and
labor charges for the repair or return of such Product.
25
26  **What are the limits on SAMSUNG's liability?**
THIS LIMITED WARRANTY SETS OUT THE FULL EXTENT OF
27  SAMSUNG'S RESPONSIBILITIES, AND THE EXCLUSIVE
REMEDY REGARDING THE PRODUCTS. <u>ALL IMPLIED</u>
28

1

WARRANTIES, INCLUDING WITHOUT LIMITATION, IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THIS LIMITED WARRANTY. …

2

3

Dkt # 1, Ex. A at pp. 15-17 (underline emphasis added).[3]

4

5

It is Samsung's custom to direct owners of the Galaxy S phones to their local wireless carrier for service under the Warranty. *Id.*, ¶ 36. In fact, specific instructions on Samsung's online support forum direct consumers to take their defective Galaxy S to their wireless "service provider" for repair and service. *Id.*, ¶¶36, 42. Samsung has suggested several remedies for the defective phone, all without success. *Id.*, ¶ 3. Specifically, Samsung and Class members' wireless carriers attempted to remedy the Defect by providing ineffective and damaging "software updates," phone resets, and replacement Galaxy S phones suffering from the same defect. *Id.*, ¶ 5.

6

7

8

9

10

11

12

Plaintiff experienced the Defect soon after purchasing her Galaxy S phone. *Id.*, ¶ 28. Plaintiff's repeated attempts to have her phone repaired in accordance with Samsung's express warranty were unsuccessful. *Id.* Replacement Galaxy S phones suffer from the same defect. *Id.*, ¶¶ 4-5, 32-54.

13

14

15

16

Samsung has failed to repair the Defect or offer meaningful relief. Thus litigation on behalf of California consumers follows Defendant's sad display of corporate indifference.

17

18

19

**III.  ARGUMENT**

20

21

**A.  STANDARD ON A MOTION TO DISMISS**

22

A motion to dismiss under Rule 12(b)(6) "tests the legal sufficiency of the claims asserted in the complaint." *In re Toyota Motor Corp. Hybrid Brake Mktg., Sales, Practices & Prods. Liab. Litig.*, -- F.Supp.2d --, 2011 WL 8986794, at * 4 (C.D. Cal. Sept. 12, 2011). The issue on a motion to dismiss is not whether the

23

24

25

26

27

28

---

[3] Samsung's motion attempts to set out the terms of its Warranty, but it appears to be a cut-and-paste from something else because it does not correspond to the language of the Warranty as attached to Exhibit A of Plaintiff's Complaint. *Cf.* M2D, at p. 3:4-23 with Compl., Ex. A.

1    plaintiff will ultimately prevail, but whether the plaintiff may offer evidence to

2    support his claims. *Id.* When evaluating a motion to dismiss, the court must accept

3    all allegations as true and construe them in the light most favorable to the non-

4    moving party. *Id.* Ultimately, the Court may not dismiss a complaint in which the

5    plaintiff has alleged "sufficient factual matter, accepted as true, to 'state a claim that

6    is plausible on its face.'" *Ashcroft v. Iqbal,* 129 S.Ct. 1397, 1949 (2009). A claim

7    has facial plausibility when the pleaded factual content "raise[s] a reasonable

8    expectation that discovery will reveal evidence" of wrongdoing and "allow[s] the

9    court to draw the reasonable inference that the defendant is liable for the misconduct

10   alleged." *Matrixx Initiatives, Inc. v. Siracusano,* 131 S.Ct. 1309, 1312 (2011) citing

11   *Iqbal,* at 1949.

12           "The Ninth Circuit," moreover, "is particularly hostile to motions to dismiss

13   under Rule 12(b)(6)." *Memory Control Enterprise, LLC v. Edmunds.com, Inc.,* 2012

14   WL 681765, at * 1 (C.D. Cal. Feb. 8, 2012); *see Gilligan v. Jamco Dev. Corp.,* 108

15   F.3d 246, 248-49 (9th Cir. 1997) ("The Rule 8 standard contains a powerful

16   presumption against rejecting pleadings for failure to state a claim").

17           **B.    PLAINTIFFS ADEQUATELY ALLEGE CLAIMS FOR BREACH
18                   OF EXPRESS WARRANTY / BREACH OF CONTRACT**

19           Under California law, to plead a claim for breach of express warranty, the

20   buyer must allege that the seller "(1) made an affirmation of fact or promise or

21   provided a description of its goods; (2) the promise or description formed part of the

22   basis of the bargain; (3) the express warranty was breached; and (4) the breach

23   caused injury to the plaintiff." *Stearns v. Select Comfort Retail Corp.,* 763 F.Supp.2d

24   1128, 1142 (N.D. Cal. 2010) (internal citations and quotations omitted).

25           "A manufacturer's liability for breach of an express warranty derives from,

26   and is measured by, the terms of that warranty." *Id.* at 1144 quoting *Cipollone v.*

27   *Liggett Group, Inc.,* 505 U.S. 504, 525 (1992). Express warranties are interpreted in

28

1  the same manner as other contracts, where "[t]he intention of the parties is sought
2  and carried into effect." *Miller v. Germain Seed & Plant Co.*, 193 Cal. 62, 93 (1924).
3  Under California law, "contracts are interpreted by an objective standard; the words
4  of the contract control, not one party's subjective intentions." *Global Packaging, Inc.*
5  *v. Superior Court*, 196 Cal.App.4th 1623, 1634 (2011).

6  Similarly, a plaintiff pursuing an action for breach of express warranty under
7  Song-Beverly can plead that: (1) the product had a defect or nonconformity covered
8  by the express warranty; (2) the product was presented to an authorized
9  representative of the manufacturer for repair; and (3) the manufacturer or its
10  representative did not repair the defect or nonconformity after a reasonable number
11  of repair attempts. *Robertson v. Fleetwood Travel Trailers of California, Inc.,* 144
12  Cal.App.4th 785, 798-799 (2006). Alternatively, a plaintiff can plead violations of
13  Song-Beverly by alleging that the defendant failed to provide service and repair
14  facilities in California for warranted products. *Horvath v. LG Electronics*
15  *Mobilecomm U.S.A. , Inc.*, 2012 WL 2861160, * 8 (S.D. Cal., Feb. 13, 2012)
16  (sustaining Song-Beverly claim based on allegations that the defendant required
17  plaintiff to "mail his phone to [LG] for service or replacement at a location outside of
18  California"); CAL. CIV. CODE § 1794(a) (providing a cause of action to any consumer
19  "who is damaged by a failure to comply with any obligation under [Song Beverly] or
20  under an implied or express warranty.")

21  The Magnuson–Moss Warranty Act provides a federal cause of action for state
22  law express and implied warranty claims. 15 U.S.C. §§ 2301, *et. seq.* Under
23  Magnuson-Moss, a consumer may bring suit against a warrantor in any state for
24  failure to comply with its obligations under a written or implied warranty. 15 U.S.C.
25  § 2310(d)(1). Prevailing on state law express and implied warranty claims requires
26  the same disposition with respect to an associated Magnuson-Moss claim. *Clemens v.*
27  *Daimlerchrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008); *In re Sony Grand*

28

1    *Wega, KDF–E A10/A20 Series Rear Projection HDTV Television Litig.*, 758
2    F.Supp.2d 1077, 1101 (S.D. Cal. 2010). Because Plaintiff has stated a claim for
3    breach of express and implied warranty under California law, Defendant's motion to
4    dismiss Plaintiff's Magnuson-Moss claim should be denied.

5        Samsung does not dispute that Plaintiff's Samsung Galaxy S comes with an
6    express Warranty, or that it was part of the basis of the bargain. *See* Compl., ¶ 74
7    (alleging an express warranty that formed the basis of the bargain). Nor does
8    Samsung dispute that it breached the Warranty. Instead, Samsung's motion argues
9    that Plaintiff did not satisfy certain purported Warranty "preconditions." These
10   arguments are makeweight and not a basis to dismiss Plaintiff's express warranty
11   claims.

12       **1.    Sprint Is An Authorized Phone Service Facility**

13       Samsung asks the Court to dismiss Plaintiff's claims for breach of express
14   warranty because Plaintiff purportedly "fails to allege <u>sufficient facts</u> showing that
15   she returned her phone to [a Samsung] authorized phone service facility, as required
16   by" Defendant's warranty.  M2D at p. 8:4-6.  Plaintiff's Complaint is governed by
17   the liberal pleading standards of FED. R. CIV. P. 8(a). But Defendant inferentially
18   argues that Plaintiff must plead that Sprint is Samsung's "authorized phone service
19   facility" with the particularity of Rule 9. Doing so however, is not required at the
20   pleading stage. *Nguyen v. PennyMac Loan Services, LLC*, 2012 WL 6062742, *
21   1 (C.D. Cal. Dec. 5, 2012) (Hon. J. Carney) (Rule 8 "requires only a short and plain
22   statement of the claim showing that the pleader is entitled to relief.")

23       Plaintiff's Complaint exceeds the plausibly threshold in alleging that
24   Plaintiff's local Sprint store was an "authorized phone service facility." The
25   Complaint specifically alleges that "it was Samsung's custom to inform customers to
26   take their phones to their local phone carriers for service." Compl. ¶ 36. Plaintiff also
27   references Samsung's official directive to Galaxy S customers experiencing the

28

1  Defect, to "<u>go to your local service provider so they can check the phone for you</u>.
2  You may also call Samsung Customer Support …" Compl., ¶ 42 (quoting
3  http://www.samsung.com/us/support/owners/product/SEGI897ZKAATT) (emphasis
4  added); *see also,* Compl., ¶ 28 (when Plaintiff began experiencing the defect, she
5  took it to her La Habra Sprint store where "Defendant's authorized agent …
6  attempted to resolve the defect.")

7       Plaintiff's allegations are satisfactory, given that "[Samsung's] warranty does
8  not specify what constitutes an 'authorized phone service facility.'" Compl. ¶ 36.
9  That this term is undefined does not make it ambiguous, but if it was, "ambiguities
10 are generally construed against the party who caused the uncertainty to exist."
11 *Wallman v. Suddock*, 200 Cal.App.4th 1288, 1304 (2011). Tellingly, <u>Samsung does</u>
12 <u>not argue that Plaintiff's local wireless carrier is not *in fact* an "authorized phone</u>
13 <u>service facility" under the Warranty</u>.

14      To the extent Plaintiff's Sprint store was not an "authorized phone service
15 facility" under the Warranty, Plaintiff alternatively alleges that Samsung failed to
16 maintain <u>any</u> service and repair facilities in California, entitling Plaintiff to take the
17 phone to the retailer for service and repair. CAL. CIV. CODE §§ 1793.2(a) and 1793.3.
18 *See* Compl., ¶¶ 78, 104. Civil Code section 1793.2(a)(1)(A) requires manufacturers
19 of consumer goods sold in California to "[m]aintain in this state sufficient service
20 and repair facilities … to carry out the terms of those warranties or designate and
21 authorize … independent repair or service facilities". A manufacturer's failure to
22 provide adequate service and repair facilities allows a consumer to take the
23 warranted product to their retailer for repair or service. CAL. CIV. CODE § 1793.3.

24      Defendant cites to *Forty-Niner Sierra Resources, Inc. v. Subaru of America,*
25 *Inc.*, 416 F.Supp.2d 861, 865 (E.D. Cal. 2004) for the proposition that if Sprint and
26 other wireless carriers are "retail seller[s]" under California Civil Code § 1793.3,
27 they cannot be "authorized phone service facility[ies]" under the Warranty.

28

According to Defendant, if "[Samsung] has not designated any authorized phone service facilities in California, then it follows that the local phone carrier to which Plaintiff took her phone in California was not a [Samsung] authorized phone service facility."[4]

This argument is flawed and circular because if the Sprint store to which Plaintiff took her phone is in fact an "authorized phone service facility" under the Warranty, then Plaintiff has clearly satisfied all preconditions to establish Defendant's breach thereof. But if Plaintiff's local Sprint store is not an "authorized phone service facility," because "Samsung maintains no direct repair facilities in this state, ... as required by law" (Compl., ¶ 35), then Plaintiff has adequately alleged Samsung's violation of Civil Code section 1793.2(a). *Horvath,* 2012 WL 2861160, * 8 (sustaining Song-Beverly claim based on allegations that the defendant required plaintiff to "mail his phone to [LG] for service or replacement at a location outside of California"); *see also, Jensen v. BMW of North America, Inc.*, 35 Cal.App.4th 112, 121 (1995) ("The manufacturer is required to maintain service and repair facilities in California") citing CAL. CIV. CODE § 1793.2(a).

Plaintiff has thus alleged Samsung's liability regardless of whether wireless carriers are "authorized phone service facility[ies]" under the Warranty or "retail seller[s]" under Song-Beverly. Either way, Samsung's argument fails. *See,* CAL. CIV. CODE § 1794(a) (providing a cause of action to any consumer "who is damaged by a failure to comply with any obligation under [Song Beverly] or under an implied or express warranty.")

In addition, Defendant's splitting of legal hairs when the argument is bald results in irrational outcomes relative to the language and purpose of the Song-

---

[4] *See also* Compl., ¶ 37 ("Samsung's and the retail seller's action show that under all applicable laws and as a reasonable construction of such warranties, phone carrier entities are phone service facilities authorized by Samsung for purposes of compliance with any express warranty obligations.").

1    Beverly Act. Song-Beverly "is strongly pro-consumer," *Mexia v. Rinker Boat Co.,*

2    *Inc.*, 174 Cal. App. 4th 1297, 1303-04 (2009), and "is manifestly a remedial

3    measure, intended for the protection of the consumer; it should be given a

4    construction calculated to bring its benefits into action." *Martinez v. Kia Motors Am.,*

5    *Inc.*, 193 Cal. App. 4th 187, 195 (2011). To find, as Samsung argues, that a

6    manufacturer can evade all responsibility under its express warranties so long as it

7    violates California law, by failing to "maintain service and repair facilities within the

8    state," would emasculate Song-Beverly. *Id.* at 193

9        This would be untoward as "[i]nterpretations that would significantly vitiate a

10   manufacturer's incentive to comply with the [Song-Beverly] Act should be avoided."

11   *Id.* at 195; *Jiagbogu v. Mercedes-Benz USA*, 118 Cal. App. 4th 1235, 1244 (2004).

12   Shifting blame to the retailer has been similarly rejected by the California courts. *See*

13   *Martinez*, 193 Cal. App. 4th at 195; *see also Cummins, Inc. v. Superior Court*, 36

14   Cal. 4th 478, 484 (2005) ("The Song-Beverly Consumer Warranty Act was enacted

15   to address the difficulties faced by consumers in enforcing express warranties.")

16               **2.    Plaintiff Gave Samsung A Reasonable Opportunity To Repair
17                      Or Replace The Phone By Taking It To Defendant's
                       Authorized Phone Service Facility, And  Because Calling
18                     Samsung Customer Care Is Not A Condition Precedent
                       Under The Warranty**

19       Samsung argues that "[Plaintiff] does not allege ... that she actually called

20   [Samsung Customer Care] ... Thus because Plaintiff failed to allege that she returned

21   her phone to a service facility identified by Samsung Customer Care, Plaintiff failed

22   to allege sufficient facts showing that she satisfied the condition precedent." M2D at

23   p. 8:18-22. However, a call to Samsung Customer Service cannot be a condition

24   precedent unless the language of the warranty "expressly conditions" Samsung's

25   obligations on such a call. *See Travelers Cas. and Surety Co. v. Transcontinental Ins.*

26   *Co.,* 122 Cal.App.4th 949, 957 (2004).

27

28

1    In *Wailea Partners, LP v. HSBC Bank USA, N.A.,* 2011 WL 6294476 (N.D.

2    Cal. Dec. 15, 2011), the court considered the same question in determining whether

3    the following language of an investment contract constituted a condition precedent to

4    creation of the agreement:

5         The [Senator] Fund will invest substantially all of its assets in a managed
          account (the "Managed Account") at all times during the term of this
6         Transaction. The Investment Manager will use a split-strike conversion
          strategy.
7
8         The [Senator] Fund will only invest in (1) stocks in the S & P 100 index,
          (2) option on S & P 100 index, and/or (3) Money Market/US Treasury
9         Bills.

10   *Id.*, * 10.  The court held that "these provisions cannot be construed as conditions

11   because they lack the  'unmistakable language of condition' such as 'if,' 'unless and

12   until' and/or 'null and void.'" *Id.*

13        The Warranty's language concerning a call to Samsung Customer Service is

14   far less obligatory than the contract terms in *Wailea Partners.* Here, Samsung's

15   Warranty merely states: "<u>To obtain assistance</u> on where to deliver the Product, please

16   call SAMSUNG Customer Care at 1-888-987-4357." Compl., Ex. A, at contract p.

17   17 (emphasis added). The plain language of the Warranty is clear that Samsung

18   included its Customer Care number only to provide "assistance" to those customers

19   that did not know where to deliver their defective phones. It follows that, far from

20   being a condition, calling Customer Care is optional; customers that know what

21   persons or entities qualify as "authorized phone service facility[ies]" need not call.

22        Placing Defendant's semantics aside, Samsung does not otherwise contest that

23   Plaintiff gave Samsung a reasonable opportunity to cure the defect under the terms of

24   the Warranty. Nor would further efforts by Plaintiff be anything other than a

25   nugatory act, as Plaintiff alleges:

26        In approximately May 2012, Plaintiff's phone began to experience the
          defect, and she took the phone to her La Habra Sprint store to have it
27        fixed or obtain a replacement phone. Defendant's <u>authorized agent</u> at
          Sprint attempted to resolve the defect with a system reboot and/or
28

1

> software patch, but Plaintiff's phone shortly thereafter experienced the defect. Again on June 15, 2012, Plaintiff took the phone to the La Habra Sprint store, where Defendant's agents tried to resolve the defect, which was also not successful.

2

3

4 Compl., ¶ 28. In addition, Samsung and the wireless carriers "provided Class

5 members with ineffective and damaging 'software updates' and phone resets and

6 replacement Galaxy S phones suffering from the same defect. This inadequate

7 response has only perpetuated an endless cycle of futility ... and has not cured the

8 defect or provided Class members a product that conforms to all express and implied

9 warranties." Compl. ¶ 5.[5]

10 Ironically, the only logical inference that can be drawn from these allegations

11 is that Sprint and other wireless carriers obtained the software patches and updates

12 from Samsung! In addition, the fact that Class members' wireless carriers replaced

13 the defective phones with replacement Galaxy S phones suffering from the same

14 defect must have been pursuant to Defendant's warranty because carriers like Sprint

15 disclaim all warranties for wireless devices. *Cf.* Pennington Decl., Ex. A, Dkt # 16-2,

16 at contract p. 13 (purported Sprint Service Agreement's disclaimer of warranties).

17 These allegations are sufficient to state a claim. *See, Robertson*, 144 Cal.App.4th at

18 799 ("The reasonableness of the number of repair attempts is a question of fact to be

19 determined in light of the circumstances, but at a minimum there must be more than

20 one opportunity to fix the nonconformity.")

21 Further, Samsung's knowledge of the defect in the Galaxy S phones at the

22 time it was selling them also satisfies the opportunity to cure requirement. *See*

23 Compl., ¶¶ 2, 3, 7; *McFadden v. Dryvit*, 2004 WL 2278542, at *17 (D. Or. Oct. 8,

24 2004); *Radford v. Daimler Chrysler Corp.*, 168 F. Supp. 2d 751, 754 (N.D. Ohio

25 2001). In *Alberti v. General Motors Corp.*,, a class action for breach of warranty, the

26

27 ─────────
[5] *See also,* Compl., ¶ 3 ("Samsung has admitted [the] defect and suggested several alternative remedies to consumers, all without success.")

28

1    court found the "Plaintiffs' allegation that GM knew of the alleged defects at the

2    time of sale disposes of defendant's argument that Plaintiffs have failed to meet the

3    'opportunity to cure' requirement of Magnuson-Moss." 600 F. Supp. 1026, 1028 n. 2

4    (D.D.C. 1985).

### 3. The Phone's Defects Are Covered By The Warranty For "Materials And Workmanship"

7        Samsung argues for dismissal by claiming that the Defect is a design defect

8    not covered by the Warranty's representation that the phones will be "free from

9    defects in materials and workmanship." M2D, at 9:17-28.  In so doing, Samsung

10   ignores the Complaint's allegations that the "Galaxy S mobile phones suffer from a

11   software or hardware defect" (Compl., ¶ 2), and a "manufacturing defect." *Id.*, ¶ 56.

12       In *Horvath*, 2012 WL 2861160, the Southern District of California considered

13   a class action against mobile phone maker LG for violations of, *inter alia*, express

14   warranty. The plaintiff there alleged that the LG phone contained "an inherent design

15   or manufacturing defect" that "causes the phones to randomly freeze, crash, reset or

16   power-off completely, rendering the phones inoperable and unfit for their intended

17   use and purpose."  *Id.*, at * 1.  LG moved to dismiss, arguing that its express

18   warranty representations that the phones "will be free from defects in material and

19   workmanship" for one year "does not cover design defects and that [p]laintiffs fail to

20   allege material and workmanship defects." *Id.*, at * 4.

21       The court believed that an *express* warranty covering "materials and

22   workmanship" does not include design defects (*Id.*, at *5), but nevertheless held that

23   that the plaintiffs' alleged "manufacturing defect" that "causes the phones to

24   randomly freeze, crash, reset or power-off completely" were "not based solely on

25   alleged design defects," but fit squarely within the "materials and workmanship"

26   language of LG's express warranty. *Id.,* at * 5. Denial of LG's motion to dismiss

27   followed. *Horvath* is directly on point.

28

1

2

## C.   PLAINTIFF'S COMPLAINT ALLEGES BREACH OF IMPLIED WARRANTY

3

Samsung argues that "Plaintiff's breach of implied warranty claims … should

4

be dismissed for lack of privity and failure to plead that [Samsung] failed to repair or

5

replace her phone." M2D, at p. 10:5-7, and § III.D.   According to Samsung,

6

"Plaintiff has also not alleged that [Samsung] failed to provide the only remedy it is

7

obligated to provide … repair and replacement of her phone. … if a remedy is

8

'expressly agreed to be exclusive … it is the sole remedy' available for breach of

9

implied warranty." M2D at p. 10:18-21 citing CAL. COM. CODE § 2719(1)(b).

10

Samsung bases this position on a reconstruction of its argument that Sprint is not an

11

"authorized phone service facility" by positing that Plaintiff fails to allege with

12

particularity that Sprint is Samsung's agent. M2D at p. 11:13-17.

13

Defendant's argument fails because: (1) Song-Beverly does not require

14

privity with the manufacturer, particularly where the ultimate consumer is an

15

intended beneficiary of the warranty (*Gonzalez v. Drew Industries, Inc.*, 750

16

F.Supp.2d 1061, 1073 (C.D. Cal. 2007),) (2) California law does not require that a

17

plaintiff allow a manufacturer reasonable opportunities to cure a defect resulting in a

18

lack of merchantability. *Keegan v. American Honda Motor Co., Inc.*, 838 F.Supp2d

19

929, 947, n. 55 (C.D. Cal. 2012), and (3) Samsung's argument that Sprint is not its

20

agent is unpersuasive because Sprint was at all relevant times an "authorized phone

21

service facility" of Defendant.

22

California Civil Code § 1792 states that, "every sale of consumer goods that

23

are sold at retail in this state shall be accompanied by the manufacturer's and the

24

retail seller's implied warranty that the goods are merchantable." Unlike an express

25

warranty, " 'the implied warranty of merchantability arises by operation of law' and

26

'provides for a minimum level of quality.'" *Isip v. Mercedes-Benz USA, LLC,* 155

27

Cal.App.4th  19,  26  (2007)  (citations  omitted).   The  implied  warranty  of

28

1  merchantability requires that the product "[p]ass without objection in the trade under
2  the contract description" and be "fit for the ordinary purposes for which such goods
3  are used..." CAL. CIV. CODE § 1791.1(a); CAL. COMM. CODE § 2314(2) (same).

4  Samsung's argument that "repair and replacement of her phone" is Plaintiff's
5  exclusive remedy holds water only if Samsung had disclaimed all other warranties,
6  which Samsung did not do. *See,* Compl., Ex. A, at contract p. 17. ("IMPLIED
7  WARRANTIES    OF    MERCHANTABILITY    AND    FITNESS    FOR    A
8  PARTICULAR PURPOSE, ARE LIMITED TO THE DURATION OF THIS
9  LIMITED WARRANTY. ....").[6]

10 Samsung Galaxy S phones are not fit for their ordinary purpose. *See, Horvath,*
11 2012 WL 2861160, * 7 (holding that plaintiff's allegations that LG smartphones
12 randomly freeze, crash, reset or power-off completely, adequately alleged breach of
13 implied warranty). As happened in *Isip,* 155 Cal.App.4th at 26–27, the court
14 "reject[ed] the notion that merely because a vehicle provides transportation from
15 point A to point B, it necessarily does not violate the implied warranty of
16 merchantability. A vehicle that smells, lurches, clanks and emits smoke over an
17 extended period of time is not fit for its intended purposes."); *See also, Keegan,* 838
18 F.Supp.2d at 948 (holding that an automobile consumer's allegations that new
19 vehicle had defect in rear suspension creating uneven and early tire wear, causing
20 him to replace tires prematurely were sufficient to state a claim for breach of implied
21 warranty of merchantability under Song-Beverly)

22 Here, Plaintiff alleges that immediately after release of the Samsung Galaxy
23 S3, the phone manifested a defect causing it to randomly freeze, shut down, and
24 power-off while in standby mode (Compl., ¶¶ 19-20), occurring as often as ten times

25 ─────────────────────────
   [6] Moreover, Samsung's argument that its warranty strictly limits its liability to the repair or
26 replacement of a Galaxy phone also fails because Defendant's default "was total and fundamental."
   *RRX Indus., Inc. v. Lab-Con, Inc.,* 772 F.2d 543, 547 (9th Cir. 1985); *see also S.M. Wilson & Co. v.*
27 *Smith Int'l., Inc.,* 587 F.2d 1363, 1374-1375 (9th Cir. 1978) (inability of seller to cure substantial
   defects in tunnel boring machine established that the limited repair remedy failed of its essential
28 purpose).

1   per day (*Id.*, ¶ 22), and requiring the consumer to remove the battery, reinsert it, and

2   power the phone back on to be temporarily operable. *Id.*, ¶ 21. *Horvath, Isip,* and

3   *Keegan*, reaffirm that Galaxy S phones are not fit for their ordinary purpose.

4   Recognizing the cogency of Plaintiff's allegations, Samsung argues that

5   Plaintiff's breach of implied warranty claim fails because Plaintiff is not in vertical

6   privity with Defendant. M2D, at p. 10:8-17. However, Defendant's "vertical privity

7   argument 'ignores the plain language of the Song-Beverly Act,'" and is an incorrect

8   statement of California law. *Gonzalez*, 750 F.Supp.2d at 1072 citing *Gusse v. Damon*

9   *Corp.*, 470 F.Supp.2d 1110, 1116 n. 9 (C.D. Cal. 2007); CAL. CIV. CODE § 1792.

10  Even if the vertical privity requirement did apply for implied warranty claims

11  – it does not – California recognizes an exception when the plaintiff is an intended

12  third-party beneficiary of the contract between a manufacturer and a dealer. *Horvath,*

13  2012 WL 2861160, * 7 (upholding implied warranty for defective smartphones when

14  plaintiff bought the phones from their wireless carrier because plaintiffs were

15  intended beneficiaries of the implied warranty) citing *Gilbert Fin. Corp. v. Steelform*

16  *Contracting Co.*, 82 Cal.App.3d 65, 69–70 (1978); *Toyota Motor Corp. Unintended*

17  *Acceleration Marketing, Sales Practices, and Products Liability Litig.*, 754

18  F.Supp.2d 1145, 1184-85 (C.D. Cal. 2010) (same). Vertical privity will not be

19  Samsung's salvation.

20  The same fate befalls Samsung's argument that Plaintiff's implied warranty

21  claim fails unless Plaintiff gave Samsung "an opportunity to repair or replace her

22  phone or that [Samsung] failed to do so." M2D, at p. 10:26-27. This is because the

23  "reasonable opportunity" requirement does not apply to implied warranty claims

24  under California law. *Keegan*, 838 F.Supp.2d at 947, n. 55 (rejecting defendants'

25  argument that the implied warranty of merchantability arising under Song-Beverly

26  requires consumers to provide manufacturers with a reasonable opportunity to cure

27  the defect before liability attaches) citing *Mocek v. Alfa Leisure, Inc.*, 114

28

Cal.App.4th 402, 406-08 (2003) (same). Plaintiff was not required to allow Samsung to repair or replace the phone.

Ignoring clear authority, Samsung argues that "Plaintiff's implied warranty claims depend on whether Sprint was [Samsung]'s agent," and that "Plaintiff has failed to [*sic.*] sufficient enough facts" to plead either actual or ostensible agency. M2D, at p. 11: 5-6, 13-14. Samsung cites no authority to support this argument because it is simply a red herring.

Defendant's "agency" argument repeats the above discredited assertion that Sprint and other wireless service providers are not "authorized phone service facilities" and fails for the same reasons. *See*, §§ III.B.1 and 2, *supra.* Samsung's Warranty makes clear that it has designated certain third parties as "authorized phone service facility[ies]," which Plaintiff alleges are the wireless carriers that sold Plaintiff and the Class their phones. *E.g.,* Compl., ¶ 35. A requirement that an implied warranty claim can only be established by detailed factual allegations arduously dissecting the relationship between Samsung and its wireless carriers is found nowhere in the law.

To be clear, it is uncontested that the Complaint alleges "it was Samsung's custom to inform customers to take their phones to their local phone carriers for service," and that those wireless carriers had software updates presumably provided by Samsung, pursuant to official directives from Samsung's website to take the defective phones to wireless carriers for service. Compl. ¶¶ 5, 36, 42; *see also,* Compl., ¶ 28.

## D. PLAINTIFF PLAUSIBLY ALLEGES DEFENDANT'S VIOLATION OF THE UCL

California's Unfair Competition Law ("UCL") prohibits "unfair competition," which is broadly defined to include at least "three varieties of unfair competition-acts or practices which are unlawful, or unfair, or fraudulent." *Cel Tech Comm' Inc. v.*

1   *Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999). Because the statute is
2   written in the disjunctive, Plaintiffs need allege only one "unlawful" or "unfair" act
3   or practice. *Lippitt v. Raymond James Fin. Servs.*, 340 F.3d 1033, 1043 (9th Cir.
4   2003).

5        Despite Plaintiff's clear and cogent allegations that Defendant violated Song-
6   Beverly and Magnuson–Moss, Samsung argues that Plaintiff has failed to plead a
7   violation of the unlawful prong. M2D at § III.G.1. One unlawful act or practice
8   suffices to state a UCL claim (*Lippitt*, 340 F.3d at 1043), and a violation of Song-
9   Beverly or Magnuson-Moss qualifies as an unlawful act. *Horvath*, 2012 WL
10  2861160 at * 10; *Korea Supply Co. v. Lockheed Martin* Corp., 29 Cal. 4th 1134,
11  1159 (2003) ("an act is independently wrongful if it is unlawful, that is, if it is
12  proscribed by some constitutional, statutory, regulatory, common law, or other
13  determinable legal standard.").

14       Samsung also contends Plaintiffs' claims under the unfair prong also should
15  be dismissed, as if this is "the rare situation in which granting a motion to dismiss [a
16  UCL claim] is appropriate." *Williams v. Gerber Prods. Co.*, 523 F.3d 934, 939 (9th
17  Cir. 2008). A business practice is "unfair" under the UCL if it "offends an
18  established public policy" or when the practices "is immoral, unethical, oppressive,
19  unscrupulous or substantially injurious to consumers." *People v. Duz-Mor
20  Diagnostic Lab*., 68 Cal. App. 4th 654, 658 (1998). "The 'unfair' prong provides an
21  intentionally broad independent basis for relief." *Toyota Hybrid,* -- F.Supp.2d --,
22  2011 WL 8986794, at *7. Whether a business practice is "unfair" involves weighing
23  the utility of the defendant's conduct against the gravity of the harm experienced by
24  the alleged victims. *Lippitt*, 340 F.3d at 1043; *Motors, Inc. v. Times Mirror Co.*, 102
25  Cal. App. 3d 735, 740 (1980). Thus, in *In re NVIDIA GPU Litig.*, the court found
26  the plaintiffs' allegations that a defective computer chip caused consumers to

27
28

1
2

experience display problems and crashes sufficed to state a claim under the "unfair" prong. 2009 WL 4020104, at *11 (N.D. Cal. Nov. 19, 2009).

3
4
5
6
7
8

Here, Samsung acted unfairly by (1) selling defective Galaxy S phones to consumers who were unable to use their Galaxy S phones as intended, (2) failing to use reasonable care to test its product prior to sale, and (3) continuing to sell its defective Galaxy S after learning that its phones were defective. Compl., ¶¶ 32-41, 127-28. It is clear that Samsung's "practice was substantially injuries to consumers." *NVIDIA*, 2009 WL 4020104, at * 11.

9
10

## IV.   PLAINTIFF ALLEGES ACTIONABLE CLAIMS FOR COMMON COUNTS

11
12
13
14
15
16
17
18
19

Although the Federal Rules of Civil Procedure permits claims to be "pled in the alternative," *Toyota Hybrid*, -- F.Supp.2d --, 2011 WL 8986794, at * 9, Samsung insists "Plaintiffs' common count must be dismissed because it is based on an alleged breach of warranty," M2D at p. 17:14-15. Samsung misreads the common count allegation. Among other things, Plaintiffs plead restitution and assumpsit. Compl., ¶¶ 132-138. A common count "is a simplified form of pleading normally used to aver the existence of various forms of monetary indebtedness, including that arising from an alleged duty to make restitution under an assumpsit theory." *McBride v. Boughton*, 123 Cal. App. 4th 379, 394 (2004).

20
21
22
23
24

In *Horvath*, the district court upheld a common count claim that arose, much like Plaintiffs' claims here, from a defective smart phone. 2012 WL 2861160, at * 11. Although released after the Texas decision Samsung urges the Court to follow, the *Horvath* court declined to cite the *Taliaferro* opinion, or even' dismiss the common count claim. *Id.*

25
26
27
28

## V.   **CONCLUSION**

For the reasons above, the Court should deny Samsung's motion to dismiss in its entirety. If the Court finds any part of their pleading defective, Plaintiff respectfully requests the option for leave to amend under Federal Rule of Civil Procedure 15(a).

December 14, 2012                    Respectfully submitted,

FINKELSTEIN & KRINSK LLP
By ___/s/ William R. Restis____
        William R. Restis

Jeffrey R. Krinsk
Mark L. Knutson
501 West Broadway, Suite 1250
San Diego, CA 92101-3593
Telephone: (619) 238-1333
Facsimile: (619) 238-5425
Email: wrr@classactionlaw.com

Counsel for Plaintiff and the putative Class