
UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| LAURA CARWILE,<br><br>    Plaintiff,<br><br>  vs.<br><br>SAMSUNG TELECOMMUNICATIONS AMERICA, LLC,<br><br>    Defendant. | Case No.: CV 12-05660-CJC(JRPx)<br><br>ORDER DENYING DEFENDANT'S MOTION TO COMPEL ARBITRATION AND GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS |

## I. INTRODUCTION & BACKGROUND

On June 29, 2012, Plaintiff Laura Carwile, individually and on behalf of all others similarly situated, filed this putative class action lawsuit against Defendant Samsung Telecommunications America, LLC ("Samsung"). Ms. Carwile asserts eight claims related to an alleged defect of a Galaxy S mobile phone manufactured by Samsung: (1) strict liability design defect; (2) breach of contract; (3) breach of express warranty; (4) breach of implied warranty; (5) violation of the Song-Beverly Warranty Act, California Civil Code § 1792 *et seq.*; (6) violation of the Magnuson-Moss Warranty Act, 15 U.S.C.

§ 2301 *et seq.*; (7) violation of the California Unfair Competition Law ("UCL"), California Business & Professions Code § 17200 *et seq.*; and (8) assumpsit and quasi-contract. (Dkt. No. 1 ["Compl."].) Ms. Carwile purchased the Galaxy S phone on December 6, 2011 at a Sprint Store in La Habra, California (the "Sprint Store"). (*Id.* ¶ 28.) She alleges that approximately six months after purchasing the Galaxy S, the phone began to experience a defect that caused it to freeze and power off when put into standby mode. (*Id.* ¶¶ 20, 28.) In order to return the phone to normal functioning after the defect has occurred, the phone battery must be removed and reinserted. (*Id.* ¶ 21.) Ms. Carwile alleges that she attempted to have the phone repaired at the Sprint Store on two separate occasions, yet both attempts at repair were unsuccessful. (*Id.* ¶ 28.) Presently before the Court are Samsung's motions to compel arbitration and dismiss the Complaint. (Dkt. Nos. 16, 17.) For the reasons stated below, the Court **DENIES** Samsung's motion to compel arbitration and **GRANTS IN PART AND DENIES IN PART** Samsung's motion to dismiss.[1]

## II. DISCUSSION

### A. Arbitration

Samsung contends that Ms. Carwile is compelled to arbitrate her claims pursuant to a service agreement she entered into with Sprint (the "Service Agreement"). Samsung is not a party to the Service Agreement. The Service Agreement provides, in relevant part: "We each agree to finally settle all disputes . . . only by arbitration . . . ." (Pennington Decl., Exh. A ["Service Agreement"] at 14.) "Disputes" are defined as "any claims or controversies against each other related in any way to our Services or the

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing. *See* Fed. R. Civ. P. 78; Local Rule 7-15. Accordingly, the hearing set for January 28, 2013 at 1:30 p.m. is hereby vacated and off calendar.

Agreement, including, but not limited to . . . Devices . . . ." (*Id.*)  Ms. Carwile insists that the arbitration provision of the Service Agreement is not binding on her. Nevertheless, even if it is binding, the Service Agreement does not obligate her to arbitrate her claims against Samsung.

The right to compel arbitration derives from a contractual right, and generally, "[t]hat contractual right may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration." *Britton v. Co-op Banking Group*, 4 F.3d 742, 744 (9th Cir. 1993); *see also Comedy Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1287 (9th Cir. 2009) ("The strong public policy in favor of arbitration does not extend to those who are not parties to an arbitration agreement . . . ." (citation and quotes omitted)).  As an exception to this general rule, a nonparty to an arbitration agreement may compel a signatory to an arbitration agreement to arbitrate claims in limited circumstances. *See Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir. 2006); *Lucas v. Hertz Corp.*, No. C 11-01581 LB, 2012 U.S. Dist. LEXIS 86410, at *18 (N.D. Cal. June 21, 2012) ("[A] nonsignatory can enforce an arbitration agreement as a third-party beneficiary.  Also, a signatory can be compelled to arbitrate at the non-signatory's insistence under 'an alternative estoppel theory'. . . .").

Here, Samsung argues that Ms. Carwile is obligated to arbitrate her claims under the doctrine of equitable estoppel.  The purpose of equitable estoppel is to "preclude[] a party from claiming the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes." *Mundi v. Union Sec. Life Ins. Co.*, 555 F.3d 1042, 1045 (9th Cir. 2009).  In *Mundi*, a life insurance company defendant attempted to compel an individual plaintiff to arbitration based on a provision contained in a loan agreement between the plaintiff's decedent and a third party bank. *Id.* at 1043. The defendant issued the life insurance policy in order to cover the value of the loan. *Id.* at 1044.  Following the decedent's death, the plaintiff filed a claim with the life insurance

company in order to pay the outstanding balance on the loan. *Id*. After the life insurance company denied the claim, the plaintiff brought suit. While the Ninth Circuit recognized that there might be situations where a nonsignatory defendant may compel a signatory plaintiff to arbitrate claims under the doctrine of equitable estoppel, it declined to compel arbitration based on the facts of the case. Specifically, the Ninth Circuit relied on the facts that the plaintiff's claim was not intertwined with the contract providing for arbitration, the claim did not arise out of or relate directly to the contract, the resolution of the claim did not require the examination of any provisions of the contract, the contract did not mention a separate agreement between the plaintiff and defendant, and plaintiff did not allege collusion or misconduct by the other signatory party. *Id*. at 1047. Courts, including this one, have interpreted *Mundi* as requiring two factors for a nonsignatory defendant to compel a signatory plaintiff to arbitrate: (1) the claims are intertwined with the contract containing the arbitration provision, and (2) there is a close relationship between the entities involved. *See Soto v. Am. Honda Motor Co., Inc.*, No. C 12-01377 SI, 2012 WL 5877476, at *2 (N.D. Cal. Nov. 20, 2012); *In re Toyota Motor Corp. Hybrid Brake Mktg.*, 828 F. Supp. 2d 1150, 1160 (C.D. Cal. 2011); *In re Apple & AT & TM Antitrust Litig.*, 826 F. Supp. 2d 1168, 1177 (N.D. Cal. 2011).

Samsung argues that equitable estoppel is proper because "without wireless service provided by Sprint, without agreeing to be bound by the terms of the service contract with her wireless carrier, and without allegations of Sprint's conduct, Plaintiff would have no factual basis for this lawsuit." (Def.'s Arb. Mem. at 9.) However, this "but for" connection between Ms. Carwile's claims and Sprint is not sufficient. *See In re Toyota Motor Corp. Unintended Acceleration Mktg.*, 838 F. Supp. 2d 967, 993 (C.D. Cal. 2012) ("Undoubtedly, there is a 'but for' connection between the execution of the purchase agreement and the acquisition of the vehicle . . . . Nevertheless, the [equitable estoppel] inquiry here does not depend on 'but for' causation and is instead more

nuanced."). Here, Ms. Carwile's claims are not intertwined with any provisions in the Service Agreement. Her claims allege defects with her Samsung phone and rely on Samsung's warranties, not on any terms or conditions contained in the Service Agreement. Indeed, the Service Agreement explicitly states that Sprint "MAKE[S] NO . . . WARRANTIES, EXPRESS OR IMPLIED . . . CONCERNING YOUR . . . DEVICE." (Pennington Decl. at 13.) Samsung's Warranty also provides that "[n]o agent, employee, dealer, representative or reseller is authorized to modify or extend this Limited Warranty . . . ." (Dkt. No. 1, Exh. A at 18.) Clearly, the resolution of Ms. Carwile's claims does not require an examination of the Service Agreement.

Neither is there the sort of close relationship between Samsung and Sprint that would support the application of equitable estoppel. Ms. Carwile does not allege that Sprint acted improperly in any way, or that Samsung and Sprint were acting in concert. Samsung's reliance on *Bradford v. Samsung Telecommunications America LLC et. al.,* No. CV 10-01882 MMM (OPx) (C.D. Cal. July 27, 2011) (slip op.), is misplaced. In *Bradford*, the court found two bases for compelling a plaintiff to arbitrate his claims against Samsung arising out of an arbitration provision in a service agreement he signed with T-Mobile, his wireless carrier. The plaintiff had originally brought claims against both T-Mobile and Samsung, arguing that they had both misrepresented the upgrade potential of his phone. *Id*. at 1. The court held that even after the plaintiff dismissed T-Mobile, he was still compelled to arbitrate, both under the terms of the service agreement, and under the doctrine of equitable estoppel. In holding that the doctrine of equitable estoppel compelled arbitration, the court reasoned that the plaintiff alleged interdependent and concerted efforts by the parties to misrepresent the capabilities of the phone. *Id*. at 12. In fact, the complaint rarely distinguished between the two defendants, and implied that they had been working in concert to deceive consumers.

///

///

*Id.* at n.39.  Here, however, Ms. Carwile clearly distinguishes between Samsung and Sprint throughout the Complaint.  Additionally, she does not allege that Sprint engaged in any misconduct, or that it colluded with Samsung in any way.

### B.  Motion to Dismiss

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests the legal sufficiency of the claims asserted in the complaint.  The issue on a motion to dismiss for failure to state a claim is not whether the claimant will ultimately prevail, but whether the claimant is entitled to offer evidence to support the claims asserted.  *Gilligan v. Jamco Dev. Corp.*, 108 F.3d 246, 249 (9th Cir. 1997).  Rule 12(b)(6) is read in conjunction with Rule 8(a), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2).  However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009).  When evaluating a Rule 12(b)(6) motion, the district court must accept all material allegations in the complaint as true and construe them in the light most favorable to the non-moving party. *Moyo v. Gomez*, 32 F.3d 1382, 1384 (9th Cir. 1994).  Dismissal of a complaint for failure to state a claim is not proper where a plaintiff has alleged "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  In keeping with this liberal pleading standard, the district court should grant the plaintiff leave to amend if the complaint can possibly be cured by additional factual allegations. *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995).

///
///
///
///

**1. Strict liability**

Ms. Carwile does not oppose Samsung's motion to dismiss her strict liability claim. Accordingly, the Court grants Samsung's motion to dismiss this claim.

**2. Breach of Express Warranty and Contract**

Samsung next moves to dismiss Ms. Carwile's claims for breach of express warranty and breach of contract. Ms. Carwile's breach of contract claim is based on the same warranty forming the basis of her breach of express warranty (the "Warranty") claim. "To plead a claim for breach of express warranty, the buyer must allege that the seller (1) made an affirmation of fact or promise or provided a description of its goods; (2) the promise or description formed part of the basis of the bargain; (3) the express warranty was breached; and (4) the breach caused injury to the plaintiff." *Stearns v. Select Comfort Retail Corp.*, 763 F. Supp. 2d 1128, 1142 (N.D. Cal. 2010) (internal quotations omitted). A copy of the Warranty is attached to the Complaint. In relevant parts, it states:

> SAMSUNG TELECOMMUNICATIONS AMERICA, LLC ("SAMSUNG") warrants to the first consumer purchaser ("Purchaser") that SAMSUNG's handsets and accessories ("Products") are free from defects in material and workmanship under normal use and service for the period commencing upon the date of purchase . . . .
>
> To obtain service under this Limited Warranty, you must return the Product to an authorized phone service facility in an adequate container for shipping . . . . To obtain assistance on where to deliver the Product, please call SAMSUNG Customer Care at 1-888-987-4357.

(Compl. Exh. A at 15, 17.)  The Warranty does not define the term "authorized phone service facility."

Samsung argues that the Court should dismiss Ms. Carwile's breach of contract and breach of warranty claims because Ms. Carwile has failed to allege that she satisfied a contractual precondition to her claims.  Specifically, it argues that she fails to plead that she returned her phone to an "authorized phone service facility" for repair or replacement.  Ms. Carwile contends that she fulfilled this obligation by alleging that she took her phone to the Sprint Store on two occasions for repair or replacement.  She alleges that "it was Samsung's custom to inform customers to take their phones to their local phone carriers for service." (Compl. ¶ 36.)  Ms. Carwile further alleges that "Samsung's and the retail seller's actions shows that under all applicable laws and a reasonable construction of such warranties, phone carrier entities [such as Sprint] are phone service facilities authorized by Samsung for purposes of compliance with any express warranty obligations . . . . Plaintiff complied with any warranty's [sic] preconditions based on how the term 'authorized phone service facility' has been applied and used by Samsung." (*Id.* ¶ 37.)  Under the liberal pleading standards of Rule 8, these allegations are sufficient to show that she satisfied the contractual precondition that she return her phone to an "authorized phone service facility."  Though the parties dispute whether the Sprint Store in fact qualifies as an "authorized phone service facility," that issue cannot be resolved on a motion to dismiss.

Samsung's reliance on *Taliaferro v. Samsung Telecommunications Am., LLC*, No. 3:11-CV-1119-D, 2012 WL 169704 (N.D. Tex. Jan. 19, 2012) is inapposite.  In *Taliaferro*, the court dismissed the complaint because the plaintiffs failed to plead that they returned their phones to an "authorized phone service facility," a condition precedent contained in their phones' warranties.  The court reasoned that although the

plaintiffs pleaded that they had returned their phones to a wireless carrier, they did not specifically allege that the wireless carrier was an "authorized phone service facility." *Id.* at 3.  Although the plaintiff in *Taliaferro* brought similar claims as Ms. Carwile, the cases are distinguishable.  Most importantly, unlike the complaint in *Taliaferro*, Ms. Carwile has specifically alleged that the Sprint Store is an "authorized phone service facility" under the terms of the express warranty.  As discussed above, such allegations are sufficient to overcome a motion to dismiss.

Samsung additionally argues that the Complaint contains inconsistent statements regarding whether the Sprint Store is an "authorized phone service facility." Specifically, it contends that Ms. Carwile cannot allege that the Sprint Store is an "authorized phone service facility," while simultaneously alleging that Samsung's only authorized phone service facility is located in Texas,  (Compl. ¶ 78).  Though the Court recognizes the potentially inconsistent nature of these allegations, the Federal Rules of Civil Procedure "explicitly authorize litigants to present alternative and inconsistent pleadings." *Molsbergen v. United States*, 757 F.2d 1016, 1018 (9th Cir. 1985).

Samsung further contends that Ms. Carwile's breach of express warranty and contract claims fail because she asserts a design defect, whereas the Warranty only covers "defects in material and workmanship."  Courts have held that warranties covering defects in "material and workmanship" do not cover design defects.  *See, e.g.*, *Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, No. 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *5 (S.D. Cal. Feb. 13, 2012); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d at 1180–81; *Brothers v. Hewlett–Packard Co.,* No. C–06–2254 RMW, 2007 WL 485979, at *4 (N.D.Cal. Feb. 12, 2007).  Here, however, Ms. Carwile does not limit her allegations to design defects.  Instead, she specifically alleges that the "Samsung Galaxy contains a

///

*manufacturing defect* causing the phones to randomly freeze, shut down, and power-off while in standby mode, rendering the phones inoperable and unfit for their intended use and purpose." (Compl. ¶ 56) (emphasis added.)

### 2. Breach of Implied Warranty

Samsung moves to dismiss the claim for breach of an implied warranty, arguing that Ms. Carwile has failed to allege that she is in vertical privity with Samsung. As a general rule, a plaintiff must stand in "vertical privity" with a defendant in order to bring an implied warranty of merchantability claim. *See Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1141 (C.D. Cal. 2005). Ms. Carwile argues that she is not required to allege vertical privity because her implied warranty claims are brought under the Song-Beverly Act, which does away with such a requirement. *See Gonzalez v. Drew Indus. Inc.*, 750 F. Supp. 2d 1061, 1072 (C.D. Cal. 2007) ("[T]he plain language of the Song–Beverly Act . . . has been interpreted by a sister district court in this district as explicitly imposing an implied warranty on manufacturers as well as retail sellers."). However, the Complaint contains two separate claims for breach of implied warranty, one under the Song-Beverly Act, (Compl. ¶¶ 97–106), and one presumably brought under the California Commercial Code, (*id.* ¶¶ 86–96). Although the privity requirement applies to claims under the Commercial Code, courts have recognized an exception where a plaintiff-consumer is an intended third-party beneficiary of a contract for sale of a good between a manufacturer and a dealer. *See Gilbert Fin. Corp. v. Steelform Contracting Co.*, 82 Cal. App. 3d 65, 69–70 (1978) (finding that consumer could sue subcontractor for breach of implied warranty as a third-party beneficiary of subcontractor's implied warranty to general contractor). Here, Ms. Carwile expressly alleges that she purchased her phone from the Sprint Store, an authorized Samsung retailer of phones, and that she is a "third-party beneficiar[y] of, and substantially benefited from," contracts between Samsung and the Sprint Store to sell such phones.

(Compl. ¶ 90.) These allegations are sufficient to overcome the privity requirement on a motion to dismiss. *See Horvath v. LG Electronics Mobilecomm U.S.A., Inc.*, 3:11-CV-01576-H-RBB, 2012 WL 2861160, at *7 (S.D. Cal. Feb. 13, 2012) (denying a motion to dismiss based on lack of privity where plaintiffs who alleged a claim for breach of an implied warranty related to a cell phone raised questions of fact regarding whether plaintiffs were intended beneficiaries); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d at 1185 (excusing the lack of privity under the third-party beneficiary exception where plaintiffs alleged they were the intended consumers of Toyota vehicles purchased from dealerships).[2]

### 3. Common Counts

Samsung moves to dismiss Ms. Carwile's common counts for assumpsit and quasi-contract, arguing that they are precluded by the existence of the Warranty. In *Paracor*, the Ninth Circuit noted that under California law, there can be no action in quasi-contract where there is a binding agreement defining the rights of the parties. *Paracor Fin., Inc. v. Gen. Elec. Capital Corp.*, 96 F.3d 1151, 1167 (9th Cir. 1996); *see Taliaferro*, 2012 WL 169704 at *9 ("A party can plead legal and equitable claims in the alternative, but only when one party disputes the existence of a contract governing the dispute."). Here, it is undisputed that Ms. Carwile and Samsung are parties to the Warranty, a binding contract governing the subject matter forming the basis of this action. Accordingly, the Court dismisses Ms. Carwile's common counts.[3]

---

[2] Samsung also moves to dismiss the breach of implied warranty claim on the basis that Ms. Carwile did not provide Samsung the opportunity to repair or replace her phone. However, Ms. Carwile has satisfied this obligation by pleading that she took her phone to the Sprint Store, which she alleges is a Samsung "authorized phone service facility."

[3] Samsung additionally moves to dismiss Ms. Carwile's claims for violations of the Song-Beverly Warranty Act, Magnuson-Moss Warranty Act, and the UCL. Its arguments for dismissal are premised on its contention that Ms. Carwile has failed to plead that the Sprint Store is an "authorized phone

## III. CONCLUSION

For the foregoing reasons, the Court **DENIES** Samsung's motion to compel arbitration and **GRANTS IN PART AND DENIES IN PART** Samsung's motion to dismiss.

DATED: January 23, 2013

_____

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE

---

service facility." Because the Court has already determined that Ms. Carwile's allegations are sufficient in this regard, Samsung's motion to dismiss these claims fails.